IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY WIMBUSH,<br><br>   *Plaintiff*,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>   *Defendants*. | CIVIL ACTION<br>No. 16-05783 |

**PAPPERT, J.**                       April 12, 2017

<u>**MEMORANDUM**</u>

  Gary Wimbush was incarcerated in a Philadelphia prison when, unprovoked, a group of corrections officers allegedly attacked him. Wimbush claims the officers falsely reported to the Philadelphia Police and District Attorney's Office that Wimbush was the aggressor. He was subsequently charged with various criminal offenses and the charges were later dropped. Wimbush sued the corrections officers, prison officials, a detective and the City of Philadelphia, alleging claims under 28 U.S.C. § 1983 and state law. Defendants moved to dismiss Wimbush's Complaint. For the following reasons, the Court grants in part and denies in part Defendants' motion, with leave to amend.

**I.**

  On May 30, 2014 Gary Wimbush was in custody at a detention center in Philadelphia when corrections officers Asia Bishop, Eliza Nelson, Shawntae Belton, Byron Daniels, Dalford Bradley and Hakeem Spurell allegedly attacked him. They sprayed Wimbush with pepper spray and repeatedly punched and kicked him. (Compl. ¶¶ 1 & 25, ECF No. 1.) The corrections officers, along with a police detective named Dewey,

1

then falsely claimed that Wimbush had assaulted the officers. (*Id.* ¶ 28.) Wimbush was later arrested and charged with aggravated and simple assault and reckless endangerment. (*Id.* ¶ 29.) All charges against Wimbush were *nolle prossed*. (*Id.* ¶ 30.) Wimbush contends that it was a policy or custom of the City of Philadelphia to condone both the use of excessive force against inmates and malicious prosecution of prisoners. (*Id.* ¶ 31.) Moreover, he contends that Defendants failed to train officers to use reasonable force. (*Id.* ¶ 32.)

Wimbush sued the City of Philadelphia, Philadelphia Police Commissioner Richard Ross, Commissioner of the Philadelphia Prison System Louis Giorla, Warden John Delaney, Warden Joyce Adams, Detective Dewey along with Bishop, Nelson, Belton, Daniels, Bradley, and Spurell in the Philadelphia Court of Common Pleas. Defendants removed the case on November 8, 2016, (ECF No. 1), and filed their motion to dismiss, (ECF No. 2).

**II.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*,

809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### III.

Wimbush asserts claims under § 1983 for excessive force, malicious prosecution, false arrest and cruel and unusual punishment in violation of the Fourth, Fourteenth and Eighth Amendments. To establish a *prima facie* case under § 1983, Wimbush must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Wimbush must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

### A.

Wimbush asserts § 1983 claims for excessive force under the Eighth (Count II), Fourth and Fourteenth Amendments (Count I). Fourth Amendment excessive force claims challenge unreasonable seizures prior to incarceration. *See Lamont v. New Jersey*, 637 F.3d at 177, 182–83 (3d Cir. 2011). Pretrial excessive force claims are "governed by the Due Process Clause of the Fourteenth Amendment." *Robinson v. Danberg*, No. 15-3040, 2016 WL 7364148, at *2 (3d Cir. Dec. 19, 2016) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). Post-conviction excessive force claims are

4

"governed by the Eighth Amendment, which protects convicted prisoners from cruel and unusual punishment." *Id.* at *3.

Wimbush's Complaint does not explain if he was incarcerated pre- or post-conviction, so the Court does not know under which theory to analyze his excessive force claim. Wimbush's Complaint does make clear that a Fourth Amendment excessive force theory is not applicable to this case. In his amended complaint, Wimbush should clarify his prisoner status.[1]

**B.**

In Count V, Wimbush asserts against Detective Dewey and the corrections officers § 1983 claims for deprivation of procedural due process and malicious prosecution under the Fourteenth Amendment and false arrest under the Fourth Amendment.

To state a claim for deprivation of procedural due process, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citation omitted). Wimbush has not pleaded any facts to explain why the procedures available to him did not provide due process of law.

To the extent he seeks to bring a claim for malicious prosecution under the Fourteenth Amendment, his claim fails as a matter of law. *See Wheeler v. Wheeler*, 639 F. App'x 147, 151 (3d Cir. 2016) ("[R]edress for alleged false arrest or malicious

---

[1] Defendants' contention that Wimbush has failed to state a claim because he "lumps [the corrections officers] together and vaguely attributes the alleged wrongdoing to all of them collectively" misapplies *Twombly* and *Iqbal*'s pleading standard. (Def.'s Mot., at 5, ECF No. 2.)

prosecution 'cannot be based on substantive due process considerations, but instead must be based on a provision of the Bill of Rights' such as the Fourth Amendment." (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000))).

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Courts analyzing § 1983 false arrest claims first determine whether the arrest was supported by a warrant. If Wimbush was arrested pursuant to a warrant, he must plead facts demonstrating that (1) the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000); *see also Paszkowski v. Roxbury Twp. Police Dept.*, 581 F. App'x 149, 152 (3d Cir. 2014). "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Paszkowski*, 581 F. App'x at 152 (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).

Wimbush alleges that he was arrested after the corrections officers and Detective Dewey "falsely and maliciously represented to the Philadelphia Police Department and the Philadelphia District Attorney's office" that Wimbush had assaulted them. (Compl. ¶ 29.) Wimbush does not state if he was arrested pursuant to

a warrant nor does he plead enough facts to establish that he was arrested without probable cause.

## IV.

The Court analyzes Wimbush's claims against the City under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658).

### A.

A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrew*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480). "[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all,

though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (citation and quotation omitted).

A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *see also Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). "A showing of simple or even heightened negligence will not suffice." *Id.* In other words, custom "requires proof of knowledge and acquiescence by the decisionmaker." *McTernan*, 564 F.3d at 658.

To the extent a plaintiff alleges that defendants failed to train their employees, this failure to train must also "amount to a deliberate indifference to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). Moreover, "the identified deficiency in a . . . training program must be closely related to the ultimate injury," in other words, it "must have actually caused the constitutional violation." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)) (quotations omitted). "Ordinarily, a pattern of similar

8

constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

**B.**

Wimbush has not stated a claim for an underlying constitutional violation, *see supra* Part III; his *Monell* claims accordingly fail. Regardless, he must also establish a policy or custom attributable to the municipality and plead facts sufficient to show that the policy or custom caused the alleged constitutional violation. *See Monell*, 436 U.S. at 658. He has not done so.

**i.**

In addition to suing the City of Philadelphia, Wimbush asserts claims against Warden John Delaney, Warden Joyce Adams, Commissioner Louis Giorla, and Commissioner Richard Ross in their individual and official capacities. "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Official capacity suits, however, are just another way of pleading an action against an entity of which an officer is an agent." *Id.*; *see also Monell*, 436 U.S. at 690 n.55. Therefore, if "the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself." *Id.* (citing *Graham*, 473 U.S. at 166).

9

Wimbush sued the City of Philadelphia and his claims against Delaney, Adams, Giorla and Ross in their official capacities are redundant.[2]

Wimbush's claims against them in their individual capacities fail because he has not alleged that these individuals were *personally involved* in the alleged constitutional violations. *Rode v. Dellaciprete*, 845 F.2d 1195, 2017 (3d Cir. 1988). Wimbush concedes as much in his response to the Defendants' motion. (Pl.'s Br., at 6, ECF No. 5, ("It is not alleged that Defendants Giorla, Delaney and Adams had personal knowledge of the particular acts perpetrated by the Defendant Correction Officers against the plaintiff.").) Wimbush argues instead that personal involvement or personal knowledge is not required. That is incorrect. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.3d at 1207. Wimbush has not alleged such facts in his Complaint.

**ii.**

Wimbush alleges that the City had a "policy, practice and/or custom" to (1) condone the use of excessive force, (Compl. ¶¶ 31, 73); (2) condone the malicious prosecution of prisoners by corrections officers (*id.* ¶¶ 33, 75); (3) maintain policies "exhibiting deliberate indifference to the legal and constitutional rights of persons within the Philadelphia Prison System" (*id.* ¶ 27); and (4) "fail to train correction[s] officers . . . in a manner utilizing only justified, reasonable, and necessary force," (*id.* ¶

---

[2] It does not matter that these officials represent different aspects of city government, *e.g.*, the prison system and the police department, because these departments cannot be sued apart from the City of Philadelphia itself. *See* 53 P.S. § 16257; *Lee v. Abellos*, No. 13-0486, 2014 WL 7271363, at *1 n.2 (E.D. Pa. Dec. 19, 2014); *Costobile-Fulginiti v. City of Philadelphia*, 719 F. Supp. 2d 521, 525 (E.D. Pa. 2010).

32). He fails to allege any facts to support these allegations. *See Campeggio*, 2014 WL 4435396, at *7.

Indeed, "simply paraphrasing § 1983 does not meet Rule 8's pleading requirements because it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting *McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009) (internal quotations omitted)). Wimbush's allegations merely recast the *Monell* standard into factual allegations such that the "complaint contained no specific factual allegations fleshing out the claims of supervisory liability." *Wood*, 568 F. App'x at 107.

## V.

### A.

In Count III Wimbush also brings state law claims for assault and battery against the corrections officers. Battery is "harmful or offensive contact with the person of another." *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008). Assault is acting with the intent to put a person in "reasonable and immediate apprehension" of a harmful or offensive touching and succeeding in causing such apprehension. *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960). In other words, assault is an "attempted battery." *See United States v. Mcculligan*, 256 F.3d 97, 105 (3d Cir. 2001). A bodily contact is offensive if "it offends a reasonable sense of personal dignity." RESTATEMENT (SECOND) OF TORTS § 19 (1965); *see also Schall v. Vazquez*, 322 F. Supp. 2d 594, 602 (E.D. Pa. 2004).

Wimbush alleges that while he was incarcerated in a Philadelphia prison, a group of corrections officers physically attacked him without provocation. The officers sprayed Wimbush with pepper spray, punched and kicked him and after restraining him on the ground, they continued to punch and kick him for no legitimate reason. (Compl. ¶¶ 1 & 25.) These allegations are sufficient to support a claim for assault and battery.

B.

In Count IV Wimbush asserts a claim for state law malicious prosecution against the corrections officers and Detective Dewey. "In Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

Wimbush alleges that after physically attacking him for no legitimate reason, the corrections officers and Detective Dewey lied to the Philadelphia Police and District Attorney's Office resulting in Wimbush's arrest for aggravated and simple assault and reckless endangerment. Wimbush has also alleged that the charges were ultimately *nolle prossed*, a disposition which is sufficient to show that the proceeding "ended in the plaintiff's favor." *See Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993). These facts are sufficient to state a claim for malicious prosecution.

## VI.

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing FED. R. CIV. P. 15(a)). Wimbush is free to amend his Complaint.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.